## H. O. BLAND v. WINDSOR & CATHCART et al., Appellants.

### Division Two, March 14, 1905.

1. **TAX SUIT: Additional Defendants: Publication.** Where it is desired to bring in additional defendants in a tax suit by publication, it is necessary that the amended petition state that they are non-residents or that it be accompanied by an affidavit so stating, etc. And an order of publication issued against them without such an allegation or affidavit to support it is of no validity, nor is the judgment rendered in pursuance thereof.

2. ———: **Taxes for Wrong Year.** Where the suit was for taxes for 1876 a judgment for taxes for 1877 is not valid. And a sale made under such judgment passed no title to the purchaser. Such a recital in the judgment cannot be overlooked as a mere clerical error. The statute expressly provides that the judgment shall recite the year for which the taxes are due.

3. **MARRIED WOMAN: Assignment of Certificate of Entry.** In 1857 a married woman made a cash entry for 160 acres of land, and the Land Office issued a receipt acknowledging payment in full for the land (describing it), and the next year she in writing assigned the same, and in the assignment authorized the assignee "to apply for and receive a deed for the same," and acknowledged the assignment, and both it and the receipt were recorded. In 1859 the patent was issued to her, and recorded in the county in 1860. *Held*, that, under the statute in force at the time, a married woman was incapable of making a contract disposing of her interest in land, and that her subsequent acquirement of the patent, after the assignment was made, did not enure to the benefit of the assignee, or add force or validity to her invalid assignment.

4. ——: ——: **In Trust.** Nor did the wife after the execution of the assignment and the issuance of the patent to her hold the title in trust for the assignee. The assignment was void.

5. ——: ——: **By Whom Questioned.** Under the statute in force denying to a married woman the power to contract in reference to the sale of her land, the right to question the validity of her contract of assignment is not confined to her. Any person who claims an interest in the land can invoke the invalidity of her contracts in reference thereto.

6. ——: ——: **Laches.** Where the patent was issued and recorded in due time in the county, the patentee and her grantees had the right to rest upon the record, and are not chargeable with laches in bringing a suit to have cancelled, as a cloud upon their title, the recorded assignment of the certificate of entry issued to the patentee who was a married woman, and who while she was such assigned it to defendant's ancestor.

7. ——: ——: ——: **Trustee.** A cash entry of the land in suit was made by a married woman and a receipt therefor issued to her and she assigned the same to appellants' ancestor and acknowledged the assignment, and all were recorded in 1859, and appellants claim that when the patent was thereafter issued to her she held the land in trust for such assignee and his grantees, and they ask that the plaintiff, her grantee, be decreed to hold the title in trust for them. *Held*, that, if such trust existed it has been in existence since 1859, and as the patent has been of record since 1860 and the record clearly manifested that the patentee and her grantees were the owners of the title, the assignee and his grantees were chargeable with notice of the existence of such trust from 1859, and should not now be permitted to question or disturb the legal title.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Thomas M. & Cyrus H. Jones* for appellants; *J. L. Brown* and *W. D. Jones* of counsel.

(1) The defendants' demurrer to plaintiff's evidence should have been sustained and plaintiff's bill dismissed because the plaintiff did not show any substantial testimony of possession. On the contrary, the evidence showed that he was not in possession of the property to which he claimed title and from which he was seeking to remove an alleged cloud. It is well settled in this State that one claiming the legal title, but out of possession, can not invoke equitable interposition to remove a cloud from such title. Davis v. Sloan, 95 Mo. 552; Keane v. Kyne, 66 Mo. 216; McRee v. Gardner, 131 Mo. 599; Graves v. Ewert, 99 Mo. 13; Clark v. Ins. Co., 52 Mo. 272; Odle v. Odle, 73 Mo. 289; Dyer v. Baumeister, 87 Mo. 134. (2) Under the evidence the court should have found that John McChesney, assignee of Lucretia Wortman, took by the assignment of the final 'cash entry receipt the equitable title to the land, if not the legal title, and the court should have found that any apparent legal title that Lucretia Wortman might have held by reason of the government of the United States having issued the patent to said land in the name of Lucretia Wortman, instead of in the name of John McChesney, assignee, was held by her and her subsequent grantees in trust for McChesney and his grantee and assigns. R. S. U. S., sec. 2355; Marks v. Dickson, 50 How. 501; 1 U. S. Stats. at Large, 468; 2 U. S. Stats. at Large, 76; 3 U. S. Stats. at Large, 566. Inasmuch as the above-cited statutes were enacted for the purpose of regulating the disposition of the public domain, and are not inconsistent with one another, but

relate to the same subject-matter, they will be construed *in pari materia*. 23 Am. and Eng. Ency. Law (1 Ed.), 311; Wortham v. Basket, 99 N. C. 70; Rexford v. Knight, 15 Barb. (N. Y.) 627; Rogers v. B., 27 Johns. 744. The transfer of the entry in this case was valid, even if it was made before the issuance of the patent. It was in conformity with the law and established practice at that time and for many years subsequent. Marks v. Dickson, 50 How. 501; French v. Spencer, 61 U. S. 228; 7 Copp's Landowner, 85, 86; Widdicombe v. Childers, 124 U. S. 400; Sanford v. Sanford, 139 U. S. 290. After Lucretia Wortman assigned her cash entry receipt to said land to John McChesney, she was no longer entitled to a patent, and the subsequent issuance of the patent to her constituted her a wrongful holder of the legal title at most. She held it as trustee for McChesney, his heirs, grantees and assigns. Cornelius v. Kessel, 128 U. S. 456; Widdicombe v. Childers, 84 Mo. 383; Hodge v. Hubb, 94 Mo. 489. (3) The tax suit against Lucretia Wortman, Joseph D. Morris and others, the judgment and sale of the property thereunder, operated to divest all the legal title that Lucretia Wortman held to said land by virtue of the issuance of the patent to her instead of to McChesney, as assignee and to vest the title in the purchaser, J. L. Brown. Secs. 573, 9303, 9304, 9305, R. S. 1899; secs. 3494, 6837, 6838, 6839, R. S. 1879. The order of publication as introduced in evidence was sufficient. Payne v. Lott, 90 Mo. 676; Schmidt v. Niemier, 100 Mo. 207; Black on Tax Titles (2 Ed.), sec. 170. The fact that judgment of the circuit court was rendered in this case is conclusive that a taxbill was filed and that the assessment on which the taxes named in the judgment were based was regular. State ex rel. v. Hunter, 98 Mo. 386; Jones v. Driskill, 49 Mo. 190. The discrepancy in the years stated in the judgment and those stated in the tax suit are clerical and not fatal. Black on Tax Titles, 177. Again, this judgment is valid under

section 672, Revised Statutes 1899 (sec. 3582, R. S. 1879). 17 Am. and Eng. Ency. of Law, 1826; Kohn v. Hoas, 95 Ala. 478; Freeman on Judgments (4 Ed.), sec. 135; Brown v. Walker, 85 Mo. 262. The tax deed introduced in evidence was sufficient to convey the title and is prima facie evidence of the things therein recited. Hill v. Atterbury, 88 Mo. 119. (4) The court should have held that Lucretia Wortman and her son, A. M. Wortman, and his grantees were barred by their laches. Courts of equity, where no statutes of limitations govern the case, often act upon their own inherent doctrine of discouraging antiquated demands, by refusing to interfere where there has been laches to prosecute the claim, or long acquiescence in the assertion of adverse rights. Godden v. Kimmell, 99 U. S. 201; Hollingsworth v. Frye, 4 U. S. 345; Story's Equity Jurisprudence (4 Ed.), sec. 64a; Perry v. Craig, 3 Mo. 516; Smith v. Washington, 88 Mo. 475; Piatt v. Vattier, 34 U. S. 405; Kelly v. Hurt, 74 Mo. 561; Eifort v. Craps, 58 Fed. 407; Wetzel v. Railroad, 65 Fed. 23; Fuller v. Montague, 16 U. S. App. 391; McNeely v. Terry, 61 Ark. 527; Parker v. Spencer, 61 Tex. 155; Wagner v. Baird, 48 U. S. 234; Vandyke v. Johns, 1 Del. Ch. 93. (5) Lucretia Wortman, if she was married, could only raise the question of coverture herself. Inasmuch as she failed to do so in her lifetime, her son could not invoke such question after her death. The cause of coverture is a personal one, and can only be invoked by a married woman herself. Robinson v. Thailkill, 101 Ind. 117; Crookes v. Kenneth, 111 Ind. 347. A conveyance executed by a *feme covert* can not be avoided by her after her husband's death. McNeely v. Rucker, 6 Blatch. 391; Morris v. Harris, 9 Gill 19.

*J. B. Harrison* for respondent.

(1) An action for the recovery of delinquent taxes, and the enforcement of the State's lien for the

same, is an action *in rem,* to which the owner of the
land is a necessary party. Tooker v. Leake, 146 Mo.
419. It is a necessary jurisdiction of facts, which the
petition must aver, that the defendants were the owners
of the lands proceeded against, and that the taxes had
been legally assessed thereon. The failure to make such
allegations is not cured even after judgment. State
ex rel. v. Cummings, 151 Mo. 49. No affidavit was
filed to secure the second order of publication, nor was
there an averment in the petition that the defendants
were non-residents. No order of publication can issue
unless there be an affidavit either in the plaintiff's
petition, or filed subsequently thereto, alleging that a
part or all of the defendants are non-residents. R.
S. 1899, sec. 2022; State ex rel. v. Horine, 63 Mo. App.
1; Payne v. Lott, 90 Mo. 676. Jurisdiction in proceed-
ings to enforce tax liens can be acquired only by the
method expressly provided by law. Cloud v. Pierce
City, 86 Mo. 257; Earle v. McVeigh, 91 U. S. 503;
Starbuck v. Murrey, 5 Wend. 148; Tooker v. Leake, 146
Mo. 420. In addition this taxbill expressly declared
that the taxes therein certified to remain due and de-
linquent on the back tax book, were so due and delin-
quent for the year 1876. Such a taxbill could not be
evidence that the same tax, expressed upon the face of
it to be due for the year 1876, was due for the year
1877. Yet the court in declaring the facts upon which
it renders judgment, does not find that any tax was
due for the year 1876, but that there was a total indebt-
edness of tax and interest of $17.75, for the year 1877.
State ex rel. v. Hutchinson, 116 Mo. 399; State ex rel.
v. Hoit, 123 Mo. 348. (2) Under the statute then in
force the assignment was absolutely void. R. S. 1885,
sec. 35, p. 362; Richardson v. DeGiverville, 108 Mo.
442; Bartlett v. Roberts, 66 Mo. App. 125; Shaffor v.
Kugler, 107 Mo. 58; Pearl v. Hervey, 70 Mo. 160;
Brown v. Dressler, 125 Mo. 589; Bauer v. Bauer, 40

Mo. 61; Clifton v. Anderson, 47 Mo. App. 35; Turner v. Shaw, 96 Mo. 22; Pitts v. Sheriff, 108 Mo. 110; Railroad v. Clark, 68 Mo. 371. Prior to the enabling act, a married woman, being incompetent to contract alone with respect to her lands or any interest in or to them, was also disabled from creating a trust in or upon them. Sec. 3, p. 807, R. S. 1855; Huff v. Price, 50 Mo. 228; Shroyer v. Nickell, 55 Mo. 264; Whitley v. Stewart, 63 Mo. 360. Under the statute, the wife is not bound upon her covenants contained in a deed, except so far as may be necessary effectually to convey from her and her heirs all her right, title and interest in and to the land which was in her at the time the conveyance was made. By the terms of the statute, her deed is, in effect, whatsoever its form, merely a quitclaim of her existing rights. Barker v. Circle, 60 Mo. 258; Bank v. Robidoux, 57 Mo. 446; Bradford v. Wolfe, 103 Mo. 391. (3) On the point, and to support the proposition that possession of the premises in question was in the plaintiff in this action, respondent cites the following authorities: Bell v. Clark, 30 Mo. App. 224; Moore v. Perry, 61 Mo. 174; Brown v. Hartzell, 87 Mo. 564; Ware v. Johnson, 55 Mo. 502; Reid v. Price, 30 Mo. 446. To give to a certificate of entry the properties of color of title, the claimant thereunder must hold possession open, actual and continuous. Railroad v. Clark, 68 Mo. 371; Mylar v. Hughes, 60 Mo. 105; Blackwell, Tax Titles (4 Ed.), 650; McIver v. Rayan, 2 Wheat. 29; Livingston v. Iron Co., 9 Wend. 511; Sydnor v. Palmer, 29 Wis. 226; Jackson v. Thomas, 16 Johns. 293.

FOX, J.— Respondent began this suit on the twenty-second day of January, A. D. 1901, upon a petition in equity to quiet title and to divest the appellants of any title to certain lands in Phelps county, Missouri, to-wit, the southwest quarter of section 27, township 38, range 7, and averred that the title to said real estate

passed out of the United States to one Lucretia S. Wortman, on the second day of May, 1859, by deed of patent from the United States to her, which deed of patent was duly recorded in the recorder's office in Phelps county, Missouri, in deed record A, at page 314; that afterwards, to-wit, on the twenty-fifth day of May, 1888, the said Lucretia S. Wortman, by deed of conveyance, duly executed and acknowledged, for a valuable consideration, conveyed all of said real estate to one Albert M. Wortman, which deed is of record in the recorder's office of Phelps county, Missouri, in deed record Book 24, at page 120; that afterwards, to-wit, on the thirteenth day of August, 1900, said Albert M. Wortman, together with his wife, for a valuable consideration, conveyed by their deed, duly executed and acknowledged, all of said real estate to one R. H. Black, which deed is of record in deed record 41, at page 472, of the records of Phelps county, Missouri; that afterwards, to-wit on the twenty-fourth day of August, 1900, the said R. H. Black, for a valuable consideration, conveyed by his deed, duly executed and acknowledged, all of said real estate to this plaintiff, which deed is of record in recorder's office in Phelps county, Missouri, in deed book No. 41, at page 482.

That at the February term, 1880, of the ciruit court of Phelps county, Missouri, there was pending a certain cause of action, wherein the State of Missouri, ex rel. C. V. Sanford, collector of the revenue of Phelps county, Missouri, plaintiff, and D. D. Wilson, J. D. Morris and Lucretia S. Wortman, were defendants; that said suit purported to be founded upon a taxbill for the year 1876 against the real estate aforesaid; that upon the purported taxbill, pleadings and service in said cause, a judgment was rendered against the said real estate aforesaid for delinquent taxes for the year 1876 in the sum of $13.44 and $4.21 interest thereon, which judgment was by the court adjudged to be a special lien on all of said real estate. That said

judgment rendered at the February term, 1880, of the circuit court of Phelps county, Missouri, was so rendered without any service of process, either by personal service of summons or by an order of publication as to the said Lucretia S. Wortman or Albert M. Wortman, and that they had no notice whatever of the pendency of said suit at the February term, 1880, nor was there any taxbill or pleading that would support the finding in said judgment; that said judgment was null and void, and said court had no jurisdiction over the parties owners of the realty.

The petition further avers the sale under said judgment was null and void and that at the said sale J. L. Brown was the highest and best bidder, and that the notice stated that the sale was for the unpaid taxes for the year of 1876 against said land; that by virtue of said sale the sheriff duly executed and acknowledged his deed, which was recorded in book 10, at page 115, of the records of Phelps county, Missouri. A true copy of said deed was filed, marked "Exhibit A," and made a part of plaintiff's petition. That said J. L. Brown and wife afterwards conveyed all of their right, title and interest to J. L. Windsor and A. J. Cathcart, which said deed is of record in deed book 28, of the records of Phelps county, Missouri.

The defendants' answer filed in said cause was substantially as follows:

That on the twenty-second day of June, A. D. 1857, one Lucretia S. Wortman purchased from the United States of America the southwest quarter of section 27, township 38, range 7, and paid therefor in cash $400, which said purchase was made at the United States Land Office at St. Louis, Missouri, and the register of the land office issued to said Lucretia S. Wortman its certificate of purchase, No. 29904, of date June 22, 1857, and signed by A. N. Duty, receiver of said land office, thereby conveying said land to the said Lucretia S. Wortman; and that on July 28, 1858,

the said Lucretia S. Wortman, for $400 to her paid by one John McChesney, sold and assigned said land to him by then and there executing and delivering to him an assignment of said land certificate duly attested and acknowledged. Said certificate and the assignment thereof was duly indexed and recorded on pages 89 and 90 of Book A, of the land records of Phelps county, Missouri; that John McChesney and wife on the twenty-fourth day of January, 1859, for $500 executed and delivered to Clark Bradley their warranty deed conveying said real estate to him, which deed is of record in Book A, at page 90, of the records of Phelps county, Missouri; that on December 5, 1867, Clark Bradley and wife, for $500, by warranty deed duly executed and acknowledged, conveyed said real estate to Benjamin C. Bradley, which deed is duly recorded in Book E, at page 81, of the records of Phelps county, Missouri; that on January 24, 1868, the said Benjamin C. Bradley, for and in consideration of the sum of $500, conveyed said real estate by warranty deed to Joseph D. Morris, which said deed is duly recorded in deed Book E, at page 191; that on the ....day of ........1901, the said Joseph D. Morris, by his deed, duly conveyed said land to these defendants, which said deed is duly recorded on page ...., Book ...., records of Phelps county, Missouri.

Defendants further aver that on the seventh day of August, 1880, one P. M. Gaddy, as sheriff of Phelps county, Missouri, by virtue of an execution issued on a judgment of the circuit court of Phelps county for back taxes, which said judgment was duly and properly rendered against Lucretia S. Wortman, D. D. Wilson and Joseph D. Morris, sold said land to J. L. Brown, and executed to him a deed therefor, which deed was duly recorded on page 115, of Book X, records of Phelps county, Missouri, and further avers that by reason of all of said conveyances they became and are fully vested of all the right, title and equity of the said

Lucretia S. Wortman acquired by her said certificate No. 29904.

The replication of plaintiff was substantially as follows: The plaintiff denied all new matter set up in defendants' answer, especially of fraud. Plaintiff also pleaded that Lucretia S. Wortman was under the disability of coverture and was incompetent either in law or equity to make said assignment. The plaintiff further stated that neither defendants nor any person or persons under whom they claim had been in possession of said premises, or any part thereof, within ten years next before the commencement of this suit, or have asserted any title thereto adverse to the title and claim of the plaintiff and the persons under whom he claims title.

The plaintiff further alleged that the defendants are estopped by their laches to assert any claim, legal or equitable, adverse to the title of the plaintiff or that of his grantors, for the reason that if any cause of action they had, the same accrued to them more than ten years before the filing of the answer herein, or more than ten years before the filing of this suit.

The plaintiff further alleged that the pretended assignment under which defendants set up their pretended claim of an equitable title to the premises herein and under which they seek to charge Lucretia S. Wortman as a trustee holding the title to the premises for their use and benefit, is fraudulent and void under the provisions of section 3, page 808, vol. 1, Revised Statutes 1855, and that said Lucretia S. Wortman was wholly incapable of creating the relation as trustee in *cestui que trust* by reason of the fact that she was under the disability of coverture at the time it is alleged by the defendants that said relation was entered into.

The defendants thereafter filed a general denial of all new matter set up in plaintiff's replication, and at the March term, 1902, of the circuit court of Phelps

county, said cause came on for trial, and the plaintiff, to sustain the issues on his part, offered in evidence the record of a patent recorded in deed record A at page 314 (Patent U. S. to Lucretia S. Wortman for the southwest quarter section 27, township 38, range 7, under an act of Congress of April 24, 1820, and recites that the certificate No. 29904 was deposited in the General Land Office of the United States, dated May 2, 1859).

The plaintiff then offered in evidence a quitclaim deed, dated May 25, 1888, from Lucretia S. Wortman, a widow, to Albert M. Wortman.

The plaintiff then offered in evidence a quitclaim deed from Albert M. Wortman to R. H. Black, dated August 13, 1900, filed August 16, 1900.

Plaintiff then offered in evidence a quitclaim deed from R. H. Black to H. O. Bland, dated August 24, 1900, and filed for record August 29, 1900.

Plaintiff then offered in evidence the deposition of William A. Richards, who testified as follows:

"Q. State your full name, age, residence, and occupation. A. William A. Richards, age 51, reside at 2455, Eighteenth street, N. W., Washington, D. C.; acting commissioner of the General Land Office.

"Q. Is it your duty to act as commissioner of the General Land Office during the absence of the commissioner, and how long have you so acted? A. Yes. Since September 2, 1901.

"Q. Are you the custodian of all the official records of the United States Land Office? A. I am.

"Q. State whether or not you have made a search of the original entry papers, records, and all other papers relating to the sale of section 27, township 38, range 7, in the State of Missouri. A. I have made a careful search of the records of this office relating to the southwest quarter of section 27, township 38, range 7, State of Missouri.

"Q. Do the files in your office contain the entry

papers, records, and all original papers relating to this property? A. The records of the General Land Office contain the original entry papers relating to the southwest quarter of section 27, township 38, range 7, containing 160 acres, with the exception of the duplicate receipt No. 29904, which was issued to the purchaser at the Receiver's office at St. Louis, Missouri, on June 22, 1857. The records of this office further show that patent was issued to the above-described tract of land on May 2, 1859, which patent, on June, 2nd, was transmitted to the Register and Receiver of St. Louis, Missouri, of the United States Land Office, the receipt of which was acknowledged by them on June 16, 1859. After a careful search I find that there is no evidence that the duplicate receipt No. 29904 has ever been filed in the General Land Office, and it is not of record in this office at this time.

"Q. Does there appear upon the original certificate or receipt No. 29904 any assignment of the property in question? A. No, no assignment appears of record, and if any assignment had been made it would have appeared on the duplicate receipt which is not of record in this office."

Plaintiff next offered in evidence the petition entitled, The State of Missouri ex rel. Henry Dean, collector of the revenue of Phelps county, Missouri, v. Joseph D. Morris, signed by W. W. Southgate, plaintiff's attorney, and filed with said petition was a back taxbill for $13.69, and the same was filed in the office of the circuit clerk on April 9, 1878.

Plaintiff also offered an affidavit for an order of publication against Joseph D. Morris, granted April 8, 1878.

Plaintiff also offered a certificate of publication, signed and sworn to on July 19, 1878.

Plaintiff also offered in evidence the order of publication.

All of which shows that said suit was commenced against Joseph D. Morris as the only defendant.

Plaintiff next offered in evidence circuit court record H at page 464, which shows said cause was numbered 151, and was continued for service at the August term, 1878.

Plaintiff next offered in evidence the judge's docket for the August term, 1878, of the circuit court of Phelps county, which shows the same order.

Plaintiff here offered in evidence circuit court record I, at page 131, which said record is as follows:

"February term, 1879, 19th day of February, 1879, 15th day of the term.

"State of Missouri ex rel. Henry Dean, Collector of the Revenue of Phelps County, Mo.

v.

Joseph D. Morris.

"Continued."

The judge's docket for the same term, which was next introduced in evidence, shows the same entry.

Plaintiff here offered in evidence the judge's docket for the August term, 1879, at page 94, case No. 88, which said docket is as follows, to-wit:

"State of Missouri, ex rel. and to the use of Henry Dean, Collector of the Revenue of Phelps county, Mo.

v.

Joseph D. Morris.

"Dismissed in vacation."

Plaintiff then offered in evidence circuit court record J, at page 8, as follows:

"February term, 1880, February 3, 1880, second day of court.

"The State of Missouri, ex rel.
   Henry Dean, Collector.
          v.
Joseph D. Morris.
   "Back taxes.

"Cause docketed and C. V. Sanford substituted in place of H. Dean as party plaintiff."

The judge's docket for the same term at page 161 shows the same entry and order, in addition to the following entries: "Redocketed" and "proof of publication filed."

Plaintiff here offered circuit court record J, at page 204, for the purpose of showing the judgment rendered in said cause of action, which said judgment shows that the amount of taxes and interest was $17.75 for the year of 1877.

Plaintiff then offered the original execution issued on said judgment which execution recited taxes for the year of 1876. The sheriff's return on said execution and his report of sale was also introduced in evidence, which shows his levy upon said real estate, and the sale of same to J. L. Brown for the sum of $300.

Plaintiff then offered in evidence the sheriff's deed which shows taxes for the year of 1876, and made to J. L. Brown.

There is also disclosed by the record in this case a second order of publication issued by the clerk, in vacation, on the thirteenth day of June, 1879, in a cause styled:

"State ex rel. and to the use of
  C. V. Sanford, Collector of
  Revenue of Phelps County,
  Missouri.
      against
D. D. Wilson, Joseph D. Morris,
  and Lucretia Wortman."

This order of publication was made returnable to the August term, 1879.

Plaintiff offered in evidence the deposition of A. M. Wortman, which is as follows:

"Q. What is your name, age, residence and occupation? A. Albert M. Wortman, 1520 Madison avenue, physician, legal age.

"Q. How long have you resided in Baltimore city? A. Two years last time; twelve years during former residence.

"Q. Are your father and mother alive or dead? A. Both dead. My father died June 10, 1884, and mother died July 11, 1888.

"Q. State the full names of your father and mother? A. My father's name was William Simpkins Wortman; my mother's name was Lucretia Syble Wortman.

"Q. Can you state where they died? A. Both in St. Louis, Missouri.

"Q. State when and where they were married, and how long they lived together as husband and wife? A. They were married at Shelby, Richland county, Ohio, October 19, 1851, and lived together until the death of my father.

"Q. Was your mother married on or prior to the twenty-eighth day of July, 1858? A. Yes, sir.

"Q. Have you in your possession the family record of your father and mother's marriage, and if so state the date and place of their marriage? A. I have not, but know positively from family information—Shelby, Ohio, October 19, 1851.

"Q. State whether you have in your possession or under your control the patent issued by the United States to Lucretia S. Wortman to the southwest quarter of section 27, township 38, range 7, and if you have any such patent, where is it now, if you know? A. I have not, but was told by my mother that it was either lost or stolen from her.

"Q.   Can you state where your father and mother lived in the years 1876, 1877, 1878, 1879 and 1880?   A. At St. Louis, Missouri.

"Q. Now you may state what you know about your mother having any property of her own?   A. She never had any property of her own, except a farm in Huron county, Ohio, which was given to her by my father, and this property which was bought from the Government for her by my father.

"Q.   State all you know relative to your mother's owning the southwest quarter of section 27, township 38, range 7, in Phelps county, Missouri, and state all she said to you concerning said land prior to making a deed to you in 1888?   A.   My mother owned this land, it having been purchased for her by my father about the year of 1857 or thereabouts.   She told me this much herself, saying that my father came home one day and handed her some government receipts for lands he had purchased, and told her that one of them was for land he had purchased for her in her name, which my mother told me was the same property known as the southwest quarter of section 27, township 38, range 7, in Phelps County, Missouri; she said also that the receipts were either stolen or lost, and she had lost all knowledge of the location of the land thereby, until she regained it in 1887.   That she consulted an attorney in St. Louis, Missouri, looking towards its recovery, but being at that time seriously ill, and continuing so until her death in 1888, she had no further opportunity to gain possession of the land.   My mother said that she never knew any party by the name of McChesney, or the notary who made the acknowledgement of the alleged transfer, and that her name had never been signed to any transfer of the property.   I was trustee of my mother's estate, and she told me this among other things connected with her estate.   I made a memorandum of this at the time.

"Q.   State from your best knowledge and infor-

mation whether any one was ever in possession of said lands? A. Not to my knowledge.

"Q. Have you at all times from the date of your deed to this land claimed to be the owner of this land? A. I have, for the reason that I believe that from my mother's statement that she was the rightful owner of the property, never having transferred it to any other person than myself, which she did in a legal manner.

"Q. State if you know how much property your mother had at the time of her marriage, and how much property, if any, she inherited after coverture, other than from the estate of your father? A. None."

There was evidence introduced by plaintiff as to his possession of the premises. R. and William Lupburger testified as to the fencing of the premises; while the fence was not a substantial one, it, at least, indicated the taking possession of it. The plaintiff testified that he went on to the land soon after he got his deed; that he directed Lupburger to put the wire around it, and agreed with him to join his land, and also Mr. Bruchez to join his.

The defendants introduced in evidence a certified copy of the application and purchase filed in the land office in St. Louis, and in connection therewith the deposition of A. J. Cathcart, who testified that he did not have nor never had said papers or the patent, and did not know where they were, and over the plaintiff's objection the court permitted said papers to be read in evidence.

Defendants introduced in evidence the following instruments in support of their title:

Record of certificate of purchase, No. 29904, record book A, page 89, from the United States to Lucretia S. Wortman. Said instrument was filed and recorded in Book A, at page 89, on the fifteenth day of March, 1859.

The assignment of the certificate which purported to be attached thereto, which was filed and recorded on the fifteenth day of March, 1859.

A deed from John McChesney to Clark Bradley, dated January 24, 1859, and recorded in Book A, at page 90, March 15, 1859.

The deed record of deed from Clark Bradley and wife to Benjamin C. Bradley, dated December 5, 1867, recorded in Book E, at page 81 on January 28, 1868.

The record of deed from Benjamin C. Bradley to Joseph D. Morris, in record Book E, at page 191, filed April 4, 1868.

A quitclaim deed from J. D. Morris to Windsor & Cathcart, recorded in Book 45, page 153, dated July 9, 1901, and filed for record on September 2, 1901.

The sheriff's deed from P. M. Gaddy, of record in Book X, at page 115, the same deed offered by plaintiff.

A deed from James L. Brown and wife to Windsor & Cathcart, filed and recorded on July 14, 1888, in Book 28, at page 549.

The defendants then offered in evidence the deposition of Carl Kuback, who testified to property being assessed in Sandusky, Ohio, Erie county, to Lucretia S. Wortman in the years of 1856 and 1857; also the deposition of J. P. Tessier, who testified virtually to the same facts, and also the fact that a deed had been made from William Lovering and wife to Lucretia S. Wortman for property in Erie county, Ohio.

The defendant then offered in evidence the tax books, which show to whom the land in question had been assessed.

James L. Brown, who was recalled, testified that he was the same James L. Brown who purchased said lands and conveyed same to Windsor & Cathcart, and that certain papers, including the petition, were on file and a part of the tax suit, and also in regard to the disbursement of the $300, the purchase price of said lands at the tax sale.

This is a sufficient reference to the facts developed

at the trial to enable us to determine the legal proposition involved.

Upon the submission of the cause to the court, the following findings and decree were announced and entered of record:

"At the March adjourned term, 1902, of the circcourt court of Phelps county, Missouri, and on the twenty-third day of June, A. D. 1902, this cause coming on for trial, the plaintiff appeared in person and by counsel, and the defendants by counsel, announce themselves ready for trial, and the court, sitting as a chancellor, proceeded to hear the evidence adduced in the trial of this cause. And the court, after hearing all the evidence adduced and the arguments of the counsel, finds that the plaintiff, H. O. Bland, is the legal owner in fee simple and in possession of the southwest quarter of section twenty-seven, township thirty-eight, range seven west.

"The court doth further find that the tax deed of J. L. Brown is void and of no effect, but is a shadow upon plaintiff's title to said real estate. It is therefore ordered, decreed and adjudged by the court that said deed of J. L. Brown, which is recorded in the office of the recorder of Phelps county, Missouri, in Book X, at page 115, be set aside and for naught held.

"The court further finds that the rental value of said property is ————dollars; that the said property is wild and uncultivated.

"The court doth further find that the assignment of the said land certificate, with receipt, by Lucretia S. Wortman to John McChesney, of record in the recorder's office of Phelps county, Missouri, in Book A, at page 90, conveyed no title whatever. The court doth further order, adjudge and decree that the said judgment upon said tax suit is null and void; that the said deed of J. L. Brown is null and void; that no title passed by reason of said assignment by Lucretia S. Wortman to John McChesney; that the title in fee

simple is now vested in H. O. Bland, and that he have and recover of and from the defendants his costs in this behalf laid out and expended and execution issue therefor.''

From this judgment and decree, defendants prosecuted their appeal to this court, and the cause is now here for consideration.

OPINION.

The vital legal propositions involved in this proceeding are suggested by the findings and conclusions of the trial court. The two propositions, which are embraced in the legal conclusions of the trial court, may be thus briefly stated : first, that the tax proceeding was void, hence, the deed, in pursuance of it, conveyed no title to J. L. Brown; second, that the assignment of the certificate of entry, with receipt of Lucretia S. Wortman, to John S. McChesney, of record in the recorder's office of Phelps county, Missouri, conveyed no title, either legal or equitable, to said John McChesney.

Upon the first proposition, treating the abstract before us as a correct reproduction of the record, it is apparent that the record in the tax proceeding is very much confused; this tax proceeding was begun against Joseph D. Morris, prior to or in the year 1878, by Henry Dean, the collector of the revenue of Phelps county. Petition was filed, and an affidavit as to the non-residence of defendant Morris, and order of publication issued and publication made in said proceeding. A taxbill accompanied the petition in the suit against Morris, designating him as the owner of the land, and specifying the taxes due upon said land for the year 1876.

So far as the record shows and the files of the clerk's office, this was the only petition ever filed in this proceeding; at least, there is an entire absence of any petition, charging Mrs. Wortman and D. D. Wilson

with being owners of or having any interest in the land in dispute. The record discloses that this proceeding against Morris was continued from time to time, and finally there is an entry that it was dismissed in vacation. The record also shows that an order of publication was issued in vacation by the clerk in June, 1879, in case of State ex rel. C. V. Sanford, collector, against D. D. Wilson, Joseph D. Morris and Lucretia Wortman, but it nowhere appears at this time that C. V. Sanford had been substituted as plaintiff instead of his predecessor, or that he filed a petition or amended petition, bringing in Mrs. Wortman as a party to the suit, nor does the record disclose the filing of an affidavit by Sanford, the new collector, alleging the non-residence of Mrs. Wortman and other defendants, in order to secure the order of publication, issued in June, 1879.

Subsequent to the issuance of the order of publication in June, 1879, we find from the abstract of record for the first time, after the dismissal of the case of Henry Dean v. Joseph D. Morris, the cause against Morris docketed, and C. V. Sanford substituted as plaintiff, in place of Henry Dean. This order appears at the February term, 1880, being subsequent to the issuance of and making of the publication against Mrs. Wortman.

We find again from the judge's docket that at the February term, 1880, the case is redocketed, State ex rel. H. Dean, collector, v. Jos. D. Morris and J. D. Wilson et al., and then find in said docket this entry: "Proof of publication filed. Ordered C. V. Sanford be substituted as plaintiff. Final judgment."

If C. V. Sanford, who succeeded Henry Dean as collector, was not substituted as party plaintiff until the February term, 1880, the same term at which the final judgment was rendered, we are unable to account for the recitation in the order of publication in June, 1879, nearly a year before C. V. Sanford was made a

party to the proceeding, that C. V. Sanford filed petition and affidavit alleging the non-residence of the defendants, Wilson, Wortman and Morris. It is clearly indicated from this record that the original proceeding against Morris was the basis of the final judgment rendered in the cause. That original case was continued from time to time, finally dismissed in vacation, then docketed, and C. V. Sanford substituted as party plaintiff. Now in order to bring in the other defendants, as mentioned in the second order of publication of June, 1879, it was necessary to file an amended petition with proper allegations as to their interest in the land, etc., accompanied with affidavit as to their non-residence. There is an entire absence of any amended petition, or affidavit which authorized the issuance of the order of publication of June, 1879. In fact, the record in that proceeding indicates that the second order of publication was simply issued upon the original petition against Joseph D. Morris.

Confronted with a record in this condition, we are not disposed to disturb the conclusions of the trial court, that the tax proceeding was invalid, notwithstanding the testimony of J. L. Brown. While Mr. Brown says there was a petition in the case of Sanford, collector, against Lucretia Wortman et al., and doubtless he stated truly his memory on the subject, yet his testimony makes it apparent that his recollection about the petition is very uncertain, for he says, "I can't say whether it was an amendment of an original action, or whether it was an original action." Continuing, he says, "But I remember the paper was here and the question arose about the sufficiency of that notice, and at the time the case was called into court I had these gentlemen call the court's attention to this publication."

If there was a proper amended petition, or an original petition in due form, we are unable to see how any

question arose about the publication or the sufficiency of it, as stated by Mr. Brown.

Aside from this confused state of the record, upon which this tax proceeding rests, we have a judgment for delinquent taxes for the year 1877, when the action is predicated upon the back taxes due for the year 1876. This in our opinion renders this judgment invalid. Taxes are levied for each year separately; in other words, the assessment and levy of taxes upon property for each year is a separate and distinct transaction. Each year's taxes constitute a separate and distinct obligation upon the taxpayer. By express provision of the statute, the taxes due upon land by the same owner for different years, in a suit for the recovery of such taxes, may be included in one count, but the law-makers, recognizing that the provision was jumbling separate causes of action in one count, expressly provided that the petition should show the different years for which taxes are due. [Sec. 6837, R. S. 1879.] A petition which failed to allege the years for which the taxes are due, would be fatally defective and insufficient.

Further recognizing that each year's taxes for which a recovery is sought is a separate and distinct cause of action, the statute expressly provides that the judgment shall recite the year or years for which the taxes are due. [Sec. 6838, R. S. 1879.]

Taxes due are not an obligation resting upon contract; but it is a contribution by the citizen to the support of the State government, and this contribution is by law made compulsory, and when the State undertakes to sell the land of the citizen to satisfy this contribution, it must at least substantially comply with the provisions of the statute which furnishes the remedy.

It is insisted by appellant that the recitation in the judgment for the taxes of 1877 is a mere clerical mistake, and does not affect its validity. To this insistence, we cannot give our assent. The judgment in

that proceeding was for the taxes of the year 1877, and it appears upon the face of the record that the State did not claim that any taxes were due for that year. In other words, we have confronting us, by that proceeding, a statement of a cause of action in the petition, and a judgment upon an entirely different and distinct cause of action, not embraced in the petition. This can not be done under the sections of the statute applicable to suits for the enforcement of liens for taxes upon lands. It is argued that the amount of taxes recovered in the judgment for the year 1877 is the same as that shown by the taxbill for 1876; that may be true, and that taxes upon this land for a number of years may be identical for each year; but surely that does not mean that the State can recover a judgment for taxes for any one year it may see proper, whether the taxes are delinquent or not, provided there is in fact a delinquency for some particular year. This would absolutely nullify not only the letter, but the spirit of the provisions of the statute upon that subject, that the taxes for each year are separate and distinct obligations, and are separate and independent causes of actions, under the terms of the statute.

In State ex rel. v. Hoyt, 123 Mo. l. c. 357, the State sought to collect taxes for a year, which was unauthorized by the statute, and it was said by the court in that case:

"It is well settled in this State that this court will reverse a judgment obtained on a petition which fails to state a cause of action, though no objection was made thereto in the lower court. [Childs v. Railroad, 117 Mo. 414, and cases cited.] The suit, having been brought under the statute, stated no cause of action as to the taxes for the year 1887. This charge was for a distinct debt and should be treated as an independent cause of action, a separate count. Its fatal insufficiency is apparent upon the face of the petition."

It will be observed in the case cited that the peti-

tion sought the recovery of taxes for the years 1887, 1888 and 1889. The court held that the judgment for the taxes of 1887 was unauthorized under the statute and reversed the judgment and remanded the cause with directions to enter judgment for the taxes of 1888 and 1889, which were due, and for which the court was warranted in entering judgment, but it is clear that, had that case presented a judgment for the taxes for the one year 1887, which was unauthorized, the court would have simply held that the judgment was void and reversed it without any further action. So it may be said as to the tax proceeding involved in this controversy, that it appears upon the face of the record that the judgment was rendered for the recovery of taxes for a year which the State did not claim was delinquent, and a citizen's land sold for such taxes, and it must be held that such sale was invalid, and passed no title to the purchaser.

This brings us to the consideration of the second proposition embraced in the conclusions of the trial court, that the assignment of the certificate of entry by Lucretia Wortman did not convey any title to the real estate in dispute.

As applicable to this proposition, the facts disclosed by the record show that Lucretia Wortman in 1857 made a cash entry of the land involved in the controversy; she obtained from the receiver a receipt for the money paid for said land, as follows:

"No. 29904.    Receiver's Office at St. Louis,
                                June 23, 1857.

"Received from Lucretia S. Wortman, of Erie county, Ohio, the sum of four hundred dollars and ——cents, being in full for the southwest quarter of section No. 27, in township No. 38, of range No. 7, west, containing one hundred and sixty acres and ——hundredths, at $2.50 per acre.

                        "J. S. DAUGHTERTY, Receiver.
"$400——Duplicate.

"Filed and recorded in Book A, page 89, fifteenth of March, 1859."

On the twenty-eighth of July, 1858, Lucretia Wortman made the following assignment of the certificate or receipt, above mentioned:

"Know All Men by These Presents, That Lucretia S. Wortman, of Monroeville, Huron county, Ohio, for value received, and to whom the attached certificate was issued, the number whereof is 29904, do hereby transfer and assign all my right, title, and interest in and to the said attached certificate unto John McChesney, and to his heirs and assigns forever, and authorize him to apply for and receive a deed for the same.

"Witness my hand and seal this twenty-eighth day of July, 1858.

"Lucretia S. Wortman.    [Seal.]

"In presence of:  John Wortman. .

"State of Ohio,  } ss.
"Huron County.  }

"On this twenty-eighth day of July, in the year 1858, before me personally appeared Lucretia S. Wortman, to me well known, and acknowledged the foregoing assignment to be her voluntary act and deed, and I certify that the said Lucretia S. Wortman is the identical person to whom the annexed certificate No. 29904, was issued, and who executed the foregoing assignment.

"M. H. Bond, Notary Public."

The assignment was recorded in the recorder's office of Phelps county in March, 1859.

On the second day of May, 1859, the patent was issued, conveying the land to Lucretia S. Wortman, reciting that she had deposited in the General Land Office of the United States the certificate of the Registrar, showing full payment for the land as provided by the act of Congress of April 24, 1820. This patent was recorded in the land records of Phelps county, on the

sixteenth of June, 1860. In 1888, Lucretia S. Wort-. man, who was then a widow and unmarried, conveyed this land to Albert M. Wortman, and then follows the conveyance from him down to the plaintiff, as herein indicated in the statement of this cause. It will also be noticed that the record discloses that Lucretia S. Wortman was a married woman at the time she made the assignment of the receipt, which is denominated a certificate of entry.

Upon this state of facts, it is clear that the assignment to McChesney by Mrs. Wortman did not convey any title to the real estate in dispute; this is conceded by learned counsel for appellant, in his brief before us. He says:

"Lucretia Wortman duly assigned her right, title and interest in the certificate of purchase to John Mc-Chesney. This certificate was merely a personal chattel, the assignment of which transferred her interest to McChesney. It was not a conveyance as contemplated in the statutes of Missouri."

The legal title to this land was vested in Lucretia S. Wortman by the patent from the government in 1859, and remained in her until she conveyed it to Albert Wortman in 1888. However, it is contended by appellant that while her assignment of the certificate of entry did not convey any legal title, it did convey such an equitable interest in the land as rendered the holding of the legal title by Lucretia Wortman simply in trust, for her assignee of the certificate of entry, Mc-Chesney, and his grantees.

Upon this contention, we are met with the proposition that Lucretia Wortman, at the time of this assignment, was a married woman and was incapable of conveying any interest in this land, without being joined in such conveyance by her husband.

The logic of the situation in respect to the title to this land, as disclosed by the record, is, that so far as the certificate issued to Mrs. Wortman is concerned,

it did not convey any title; it only furnished the evidence of her payment of the money for the cash entry, and that she was entitled to a patent to the land from the government. Her assignment of the certificate did not convey any title to the land; but simply a right to her assignee, as stated in the assignment, to apply for and receive the deed to the land. When the patent was issued to Lucretia Wortman, this right was extinguished, and had she been *sui juris* her assignee, by a timely proceeding in equity, may have successfully asserted his equities in the transaction.

It is undisputed that Mrs. Wortman, at the time of the assignment of the certificate, was a married woman. Under the law in force at that time, she was incapable of making any contract disposing of any interest in her land, without being joined by her husband. [Sec. 35, p. 362, R. S. 1855.]

This rule was very aptly announced by this court in Shaffer v. Kugler, 107 Mo. l. c. 63, where it is said:

"A mode has been provided by statute by which the wife may dispose of or incumber her real estate. She has no power directly or indirectly to charge or dispose of it in any other manner, and courts of equity have never enforced *quasi* contracts by which married women attempted to do so."

The law was thus stated in Huff v. Price, 50 Mo. l. c. 229:

"The law is well established that a married woman can not part with her legal estate in lands in this State except by deed, in which her husband joins, executed and acknowledged in accordance with the requirements of the statute. Nor can she make a valid contract for the sale of her legal property. She may in equity make a binding contract in regard to lands held for her sole and separate use."

SHERWOOD, J., in Shroyer v. Nickell, 55 Mo. l. c. 267, after a careful review of all the authorities, thus states the law upon this subject:

"It was one of the fundamentals of common law, that the contract of a *feme covert* was absolutely void, except where she made a conveyance of her estate by deed duly acknowledged, or by some matter of record; and this could only be done after private examination as to whether such conveyance was voluntarily made; and our statutory mode, whereby the deed of a married woman is executed and acknowledged, is but substitutionary of the common law method in this regard. This is the only change that our statute has wrought. It follows as an inevitable sequence from these premises, that, aside from the exceptional case above noted, a *feme covert* is utterly incapable of binding herself by a contract to convey her land, either at law or in equity, except by compliance with the prescribed statutory forms. An attempted contract on her part is not such compliance, nor is her disappointed intention to convey clothed with those forms."

It is unnecessary to pursue this subject further. That a married woman, under the statute in force at the time of this transaction, was incapable of making a contract disposing of her land (except it be a separate estate) is no longer an open question in view of the repeated and uniform expressions of this court upon the subject.

At the time of making this contract of assignment of the certificate of entry, Mrs. Wortman had no title to this land, and her subsequent acquirement of the legal title by the patent did not inure to the benefit of her assignee. In other words, it added no force or vitality to the contract made. This court, in Brawford v. Wolfe, 103 Mo. 391, ruled that even though the husband joined with the wife in a conveyance in due form, yet that the wife was not bound by her covenants in the deed, and that her grantees were not entitled to her subsequently-acquired title.

It is insisted by appellant that the plaintiff has no right to invoke the fact that Mrs. Wortman was a mar-

ried woman at the time she undertook to contract in respect to this land, and it is urged that the question of coverture is a personal one, and can only be invoked by the married woman herself. In other words, it is argued that, notwithstanding her contract is void and the property stands as though no such contract had been made, she is powerless to convey it, except it be burdened with a void contract, and that no one has the right to question the validity of her contract except the married woman herself. It will suffice to say that this rule is not applicable to the statute of this State in force at the time of this transaction, which so clearly imposes a disability upon married women to contract in respect to the disposition of their real estate.

Appellant insists that the plaintiff is not entitled to the relief sought, on the ground of *laches*. It is said that the transaction, which plaintiff asserts created a cloud upon his title, occurred over forty years ago, and that he ought not to be heard to complain now. On the other hand, respondents urge that appellant is not entitled to the relief sought by their answer, for the reason that the legal title to the premises is in plaintiff, and that appellants and their grantees are now seeking to enforce a trust which they concede has existed ever since the patent was issued to Lucretia Wortman in 1859.

The record discloses that this plaintiff commenced his suit within a reasonable time after securing his deed; however, it is only necessary to say, as to these two conflicting contentions, that the land records have been open to both parties, and it is apparent from the records that the legal title to this land has been vested in Mrs. Wortman and her grantees since 1859. The patent issued to Lucretia Wortman was recorded in Phelps county in 1860. McChesney, the assignee of Mrs. Wortman, as to the certificate of purchase, knew at the time of his conveyance that he had acquired no

legal title to this land by his assignment, and that the patent had been issued, conveying such title to Mrs. Wortman.

Under this state of facts, Mrs. Wortman and her grantees had the right to rest upon the record, which so clearly manifested that they were the legal owners of the property in dispute.

But can appellants say as much for their conduct, if they were entitled.to the relief now claimed, which is that plaintiff be declared as holding said land in trust for the appellants, and that he be divested of the legal title to such land, and that the same be vested in the appellants? If such trust existed, it has been in existence since 1859, and upon the facts disclosed in this case, appellants and their grantees are chargeable with notice of the existence of such trust since that date, and should not now be permitted to question or disturb the legal title to this land.

It is finally urged that plaintiff did not show such possession of the premises as authorized him to maintain this action. We have carefully considered the testimony upon the question of plaintiff's possession, the nature and character of it, and have reached the conclusion that, being vested with the legal title, his acts and conduct in respect to this property were a sufficient manifestation of taking possession of property to authorize him to maintain this suit.

The judgment and decree of the trial court, upon the facts disclosed by the record, was proper, and should be affirmed, and it is so ordered.

All concur.